# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL PARSHALL, On Behalf of Himself and All Others Similarly Situated, 2031 Imperial Golf Course Blvd. Naples, FL 34110 )<br><br>Plaintiff, )<br><br>v. )<br><br>WGL HOLDINGS, INC., 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>MICHAEL D. BARNES, 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>GEORGE P. CLANCY, JR., 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>JAMES W. DYKE, JR., 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>NANCY C. FLOYD, 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>LINDA GOODEN, 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>JAMES F. LAFOND, 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>DEBRA L. LEE, 101 Constitution Avenue, NW Washington, D.C., 20080 )<br><br>TERRY D. MCCALLISTER, 101 Constitution Avenue, NW | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| Washington, D.C., 20080 | ) |
| | ) |
| DALE S. ROSENTHAL, | ) |
| 101 Constitution Avenue, NW | ) |
| Washington, D.C., 20080 | ) |
| | ) |
| ALTAGAS LTD., | ) |
| 1700, 355 4 Avenue SW | ) |
| Calgary, Alberta T2P 0J1 | ) |
| | ) |
| and | ) |
| | ) |
| WRANGLER INC., | ) |
| 1700, 355 4 Avenue SW | ) |
| Calgary, Alberta T2P 0J1 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of WGL Holdings, Inc. ("WGL" or the "Company") against WGL and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on January 25, 2017 (the "Proposed Transaction"), pursuant to which WGL will be acquired by AltaGas Ltd. ("Parent") and its wholly-owned subsidiary Wrangler Inc. ("Merger Sub," and together with Parent, "AltaGas").

2. On January 25, 2017, the Board caused WGL to enter into an agreement and plan of merger (the "Merger Agreement") with AltaGas. Pursuant to the terms of the Merger Agreement, stockholders of WGL will receive $88.25 per share in cash.

2

3.      On March 10, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of WGL common stock.

9.      Defendant WGL is a Virginia corporation and maintains its principal executive offices at 101 Constitution Avenue, NW, Washington, DC 20080.  WGL's common stock is traded on the NYSE under the ticker symbol "WGL."

3

10. Defendant Michael D. Barnes ("Barnes") has served as a director of WGL since November 2000. According to the Company's website, Barnes is a member of the Executive Committee and Chair of the Governance Committee.

11. Defendant George P. Clancy, Jr. ("Clancy") has served as a director of WGL since December 2000. According to the Company's website, Clancy is Chair of the Audit Committee and a member of both the Executive Committee and the Human Resources Committee.

12. Defendant James W. Dyke, Jr. ("Dyke") has served as a director of WGL since September 2003. According to the Company's website, Dyke is a member of the Governance Committee and the Human Resources Committee.

13. Defendant Nancy C. Floyd ("Floyd") has served as a director of WGL since June 2011. According to the Company's website, Floyd is a member of the Audit Committee and the Governance Committee.

14. Defendant Linda Gooden ("Gooden") has served as a director of WGL since April 2013. According to the Company's website, Gooden is a member of the Human Resources Committee.

15. Defendant James F. Lafond ("Lafond") has served as a director of WGL since September 2003. According to the Company's website, Lafond is a member of the Executive Committee and Chair of the Human Resources Committee.

16. Defendant Debra L. Lee ("Lee") has served as a director of WGL since November 2000. According to the Company's website, Lee is a member of the Audit Committee.

17. Defendant Terry D. McCallister ("McCallister") has served as a director of WGL since October 2009 and is Chairman of the Board and Chief Executive Officer ("CEO") of the

4

Company. According to the Company's website, McCallister is Chair of the Executive Committee.

18. Defendant Dale S. Rosenthal ("Rosenthal") has served as a director of WGL since October 2014. According to the Company's website, Rosenthal is a member of the Audit Committee.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Canadian corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a Virginia corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of WGL (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of January 23, 2017, there were approximately 51,219,000 shares of WGL common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent

counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. WGL is a leading source for clean, efficient, and diverse energy solutions.

30. With activities and assets across the United States, WGL consists of Washington Gas, WGL Energy Services, WGL Energy Systems, WGL Midstream, and Hampshire Gas.

31. The Company provides natural gas, electricity, green power, and energy services, including generation, storage, transportation, distribution, supply, and efficiency.

32. On November 16, 2016, WGL issued a press release wherein it announced its fiscal year 2016 financial results. The Company reported that consolidated GAAP earnings per share increased from $2.62 per share in the fiscal year ended September 30, 2015 to $3.31 per

share, and GAAP earnings were a record $167.6 million. Non-GAAP operating earnings per share increased from $3.16 per share in the fiscal year ended September 30, 2015 to $3.27 per share, and operating earnings were a record $165.1 million.

33.     Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

34.     To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor AltaGas and are calculated to unreasonably dissuade potential suitors from making competing offers.

35.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 4.2(a) and (b) of the Merger Agreement state:

> (a) The Company shall, and shall cause its Subsidiaries and its and their respective directors, officers and employees to and shall use its reasonable best efforts to cause its other Representatives to, immediately cease and terminate any existing solicitation, discussion or negotiation with any Person conducted prior to the date of this Agreement with respect to any Competing Proposal or any proposal, offer or indication of interest that could reasonably be expected to lead to a Competing Proposal and request, and use its reasonable best efforts to enforce its contractual rights with respect to, the prompt return or destruction of all confidential information previously furnished to any such Person in connection with a Competing Proposal and terminate access by any such Person to any physical or electronic data room maintained by or on behalf of the Company.
>
> (b) From the date of this Agreement until the Effective Time, the Company shall not, and shall cause its Subsidiaries and its and their respective directors, officers and employees and use its reasonable best efforts to cause its other Representatives not to, directly or indirectly, (i) initiate, solicit or knowingly encourage or knowingly facilitate any proposals, offers or indications of interest regarding, or the making of any proposal, offer or indication of interest that

7

constitutes, or could reasonably be expected to lead to, a Competing Proposal, (ii) conduct, participate or engage in any discussions or negotiations with any Person with respect to a Competing Proposal or any proposal, offer or indication of interest that could reasonably be expected to lead to a Competing Proposal (except to notify such Person of the existence of the provisions of this Section 4.2), or (iii) furnish any non-public information regarding the Company or its Subsidiaries to any Person in connection with or in response to a Competing Proposal or any proposal, offer or indication of interest that could reasonably be expected to lead to a Competing Proposal.

36. Further, the Company must promptly advise AltaGas of any proposals or inquiries received from other parties. Section 4.2(d) of the Merger Agreement states:

(d) The Company shall advise Parent in writing as promptly as reasonably practicable (and in any event within 24 hours) of the receipt of any Competing Proposal or any request for non-public information regarding the Company or any of its Subsidiaries made by any Person or any request for negotiations with the Company, any of its Subsidiaries or any of their respective Representatives in connection with a Competing Proposal, and, in respect of each such Competing Proposal or request, the Company shall provide to Parent as promptly as reasonably practicable (and in any event within such 24 hour timeframe) the identity of the Person making such Competing Proposal or request and the material terms and conditions of such Competing Proposal or request (and provide copies of any such written correspondence related thereto). The Company shall keep Parent informed as promptly as reasonable practicable (and in any event within 24 hours of such material development or change) of the status, material communications (and provide copies of any such written correspondence related thereto) and material developments regarding any Competing Proposal or request (including any change in the price or other material terms or conditions thereof). The Company shall as promptly as reasonably practicable (and in any event within 24 hours) provide to Parent any non-public information regarding the Company and its Subsidiaries that is provided to any other Person in connection with a Competing Proposal that was not previously provided to Parent.

37. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants AltaGas a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.3(b) of the Merger Agreement provides:

(b) Notwithstanding anything to the contrary in this Agreement, at any time prior to obtaining the Company Shareholder Approval, the Company Board (or a duly authorized committee thereof) may make an Adverse Recommendation Change if

the Company has received a Competing Proposal (other than as a result of a material breach of Section 4.2 or this Section 5.3) and the Company Board (or a duly authorized committee thereof) has determined in good faith, (x) after consultation with its outside legal counsel and independent financial advisors, that such Competing Proposal constitutes a Superior Proposal and (y) after consultation with its outside legal counsel, that failure to make an Adverse Recommendation Change in response to the receipt of such Superior Proposal would reasonably be expected to be inconsistent with its fiduciary duties under applicable Law; provided, however, that the Company Board (or a duly authorized committee thereof) shall not be entitled to exercise its right to make an Adverse Recommendation Change pursuant to this Section 5.3(b) unless (i) the Company has provided to Parent at least four (4) Business Days' prior notice of its intent to take such action (which notice shall (A) include a copy of the proposed transaction agreements with the Person making such Superior Proposal, and specify the identity of the Person making such Superior Proposal, and (B) inform Parent that the Company intends to make such Company Adverse Recommendation Change at the end of the Superior Proposal Notice Period) (such notice being referred to herein as a "Superior Proposal Notice") (it being understood and agreed that any such Superior Proposal Notice shall not in itself be deemed an Adverse Recommendation Change); (ii) if requested to do so by Parent, the Company has negotiated, and has caused its Representatives to negotiate, in good faith with Parent during the period starting on the first (1st) Business Day following Parent's receipt of the Superior Proposal Notice and ending at 11:59 p.m., Washington, D.C. time on the fourth (4th) Business Day following such receipt (such period, a "Superior Proposal Notice Period"), regarding any changes or modifications Parent proposes to make to the terms of this Agreement such that it would cause such Competing Proposal to no longer constitute a Superior Proposal; and (iii) at the end of such Superior Proposal Notice Period, the Company Board (or a duly authorized committee thereof) shall have determined in good faith, after consultation with its outside legal counsel and independent financial advisors and taking into account any changes or modifications to the terms of this Agreement proposed by Parent to the Company in a written, binding and irrevocable offer, that such Competing Proposal still constitutes a Superior Proposal. The parties agree that any amendment to the price or other material amendment to the terms of a Superior Proposal following the delivery of a Superior Proposal Notice in respect of such Superior Proposal shall require delivery of another Superior Proposal Notice to which the provisions of clauses (i)-(iii) of this Section 5.3(b) shall apply mutatis mutandis except that, in the case of such Superior Proposal Notice with respect to an amended Superior Proposal, any references to four (4) Business Days in such clauses shall be deemed to be two (2) Business Days.

38. Further locking up control of the Company in favor of AltaGas, the Merger Agreement provides for a "termination fee" of $136 million, payable by the Company to AltaGas

9

if the Individual Defendants cause the Company to terminate the Merger Agreement.

39.	By agreeing to the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40.	The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

41.	The merger consideration further fails to adequately compensate the Company's shareholders for the significant synergies that will result from the merger.

42.	Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

43.	Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

44.	For example, WGL's management team will retain employment positions post-close.

45.	According to AtlaGas's press release dated January 25, 2017 announcing the Proposed Transaction, following the merger, "AltaGas will keep WGL's headquarters in Washington D.C. and intends to retain existing WGL executives."

46.	Additionally, Individual Defendant McCallister has stated, "The WGL team looks forward to contributing to AltaGas' future and the opportunities for growth across the organization."

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

47.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

48.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

49.     First, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

50.     Specifically, while AtlaGas has stated that it "intends to retain existing WGL executives," and Individual Defendant McCallister has commented that "[t]he WGL team looks forward to contributing to AltaGas' future," the Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment of the Company's management team, as well as the future directorship of WGL's directors, including who participated in all such communications.

51.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

52.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Recommendation of Our Board; Reasons for Recommending the Approval of the Merger Agreement"; and (iii) "Interests of the Company's Directors and Executive Officers in the Merger."

53. Second, the Proxy Statement omits material information regarding the Company's financial projections and the financial analyses performed by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman").

54. With respect to WGL's financial projections, the Proxy Statement fails to disclose, *inter alia*: (i) EBITDA; (ii) stock-based compensation expense; (iii) changes in net working capital; (iv) depreciation; (v) amortization; (vi) net income; (vii) interest; (viii) taxes; and (ix) a reconciliation of all non-GAAP to GAAP financial metrics.

55. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) estimates of unlevered free cash flow for the Company for fiscal years 2017 through 2021 as used by Goldman in its analysis, as well as the accompanying definition of unlevered free cash flow and all constituent line items; (ii) the range of illustrative terminal values for the Company; (iii) Goldman's basis for applying a range of LTM EBITDA exit multiples of 10.0x to 11.5x; (iv) the Company's estimated terminal year EBITDA; (v) the estimated benefits of the Company's net operating losses and investment tax carryforwards for years 2017 through 2025; and (vi) the Company's amount of net debt as of September 30, 2016.

56. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying illustrative next twelve month price to earnings multiples ranging from 17.0x to 21.0x; and (ii) estimated dividends per share of the Company common stock from September 30, 2016 to fiscal year-end 2017 and from September 30, 2016 to fiscal year-end 2018.

57. With respect to Goldman's *Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose: (i) estimated net income and EBITDA for the Company's segments as used by Goldman in its analysis; and (ii) the amount of the Company's non-utility net debt as of

12

September 30, 2016.

58. With respect to Goldman's *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman in its analysis.

59. With respect to Goldman's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman in its analysis.

60. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

61. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of Our Board; Reasons for Recommending the Approval of the Merger Agreement"; (iii) "Opinion of Goldman, Sachs & Co."; and (iv) "Prospective Financial Information."

62. Third, the Solicitation Statement omits material information regarding potential conflicts of interest of the Company's second financial advisor, Lazard Frères & Co. LLC ("Lazard").

63. Specifically, the Proxy Statement fails to disclose whether Lazard has provided

services to AtlaGas and/or its affiliates in the past two years, as well as the amount of compensation received by Lazard for such services.

64. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

65. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of Our Board; Reasons for Recommending the Approval of the Merger Agreement"; and (iii) "Opinion of Lazard Frères & Co. LLC."

66. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to WGL's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and WGL

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. WGL is liable as the issuer of these statements.

69. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

70.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

71.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

72.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

73.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

74.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and AltaGas

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     The Individual Defendants and AltaGas acted as controlling persons of WGL within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of WGL and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

77. Each of the Individual Defendants and AltaGas was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

79. AltaGas also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

80. By virtue of the foregoing, the Individual Defendants and AltaGas violated Section 20(a) of the 1934 Act.

81. As set forth above, the Individual Defendants and AltaGas had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 28, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long (to be admitted
*pro hac vice*)
Gina M. Serra (to be admitted
*pro hac vice*)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel.: (302) 295-5310

**LEVI & KORSINSKY LLP**

By: */s/ Donald J. Enright*
Donald J. Enright (#MD013551)
Elizabeth K. Tripodi (#979154)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
denright@zlk.com

*Attorneys for Plaintiff*

**RM LAW, P.C.**
Richard A. Maniskas (to be admitted
*pro hac vice*)
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
Tel.: (484) 324-6800

*Counsel for Plaintiff*